FARMER, J.
The probate estate of Edward O. Petries was opened in 1991, and letters testamentary were initially issued to Wiener and Tardiff. During a controversy involving their activities as personal representatives, they resigned in a 1995 settlement agreement. The agreement also settled all devises and claims in the estate, save for the residuary devise to the testamentary trust. The court-thereupon appointed a troika as personal representative (PR), consisting of Vanda, Humberto and Xose. Vanda, it should be noted, is a 50% beneficiary of the testamentary- trust, and two of her children are the beneficiaries of the remaining 50%.
The estate assets consisted of 28 cooperative apartments and a duplex, all in New York. Xose moved to New York in November 1995 to assume direct management of them. By 1997, Vanda and Humberto grew concerned with Xose’s management, and ultimately the court appointed a professional management company. Apparently disgruntled by the action, Xose reported to the New York taxing authorities that decedent had actually been domiciled in New York at the time of his death, an assertion in direct conflict with the sworn allegation in applying for probate here that decedent lived in Florida. His conduct resulted in a substantial assessment against the estate.
In 1998, Vanda and Humberto petitioned the probate court for the removal of Xose as a co-PR. Xose, in turn, counterclaimed for removal of Vanda and Humberto. In a pretrial order and stipulation, the adversary proceeding was set for trial only on Vanda and Humberto’s petition to remove Xose. After a 2-day trial, the court found substantial reasons to remove Xose as a PR and so ordered. In spite of its pretrial determination to consider only the removal of Xose, however, inexplicably the court also revoked the letters of administration for Vanda and Humberto, saying:
“The evidence presented at trial also indicates a pattern of personal dealings by both [Vanda and Humberto], along with Peter Fullerton, Esq., [counsel for the PR’s], including use of estate assets to pay the attorney’s personal home mortgage, which raised serious questions as to the propriety of much of the *1022 actions taken by the Estate. The Court finds that there is a concern that the [PR’s] may be interested- adversely to the Estate.”
The court thereupon revoked the letters testamentary of all three PR’s and appointed an administrator ad litem to complete the administration of the estate. Vanda appeals the revocation of her letters testamentary and the appointment of the administrator ad litem.[1] We reverse.[2]
Even if there were evidence supporting the court’s findings regarding Van-da and her lawyer quoted above — namely, a pattern of dealings by Vanda, the use of estate assets to pay the mortgage of Fullerton, and an adverse interest of Vanda to the estate — we would necessarily reverse because the only issue designated for trial was the conduct of Xose. An issue determined in spite of prior notice that it will not be considered is a denial of elemental due process. See Hendershot v. Hendershot, 742 So.2d 444, 445 (Fla. 4th DCA 1999) (explaining that a court can determine only those issues noticed for hearing and award only the relief sought by the pleadings). Vanda and her counsel were entitled to notice and an opportunity to be heard before the court could make any decision as to their conduct in regard to the administration of the estate. Hence, the lack of prior notice would clearly render any such determinations void.
But the far more important problem with the court’s determination is the utter lack of evidence to support it, not to mention the existence of substantial contrary evidence. The record fails to show a single instance of impropriety by either Van-da or the PR’s attorney. Indeed it is obvious that the judge was simply mistaken as to the import of the evidence- — which clearly established that no estate money was used improperly by Vanda and that any payment came' from her personal funds. Moreover any notion of an adverse interest between Vanda and the estate is belied by the fact that she is its half beneficiary and two of her children have the remaining half. Only one child is an adult, and he testified on her behalf. As we said, the record lacks any basis for the judge’s condemnation of Vanda and her counsel.
Counsel- for appellee- candidly acknowledged that the evidence does not support the grounds for removing Vanda or any suggested impropriety by the attorney for the PRs. We hope by this opinion to remove as much of the stain as possible from the name of both PR’s, as well as attorney Fullerton.
The order revoking Vanda’s letters of administration and appointing the administrator ad litem is reversed. Vanda’s letters are reinstated, and she shall continue as the PR, subject of course to removal upon good cause shown after notice and hearing. If the probate judge is concerned about the time it has taken thus far to administer the estate, he should direct the PR to file a statement of acts necessary to close the estate and specify a time *1023 table to do so. The case is returned for compatible proceedings.
REVERSED.
GROSS and TAYLOR, JJ., concur.

. Humberto and Xose have not joined in the appeal from the revocation of their letters.

. We have jurisdiction because the order decides whether Vanda should have her letters testamentary revoked, which thereby "deter-minéis] a right or obligation of an interested person.” See Fla.Prob.R. 5.100. A final order revoking letters testamentary may be ap-pealable where all rights -of the person to administer the estate are terminated by the court’s order. See In re Baker’s Estate, 327 So.2d 205, 207 (Fla. 1976) (holding that district court had jurisdiction over appeal from order revoking letters where the order in question terminated all rights of the mother to administer the estate); and cf. In re Price’s Estate, 129 Fla. 467, 176 So. 492 (1937) (no question raised as to appellate jurisdiction over order revoking letters testamentary).
Similarly, we have jurisdiction over Fullerton’s attempt to review the order in question because his status as the attorney for the PR and the trial court’s determination that estate assets were used to pay his personal debts make him a "party” within the meaning of rule 5.100. See In re Baker’s Estate, 327 So.2d at 207-208 (term "party” in rule 5.100 synonymous with "person” where order of probate judge finally determines issue as to that person).